1  JEFFER, MANGELS, BUTLER &
     MARMARO LLP
2  NICOLAS De LANCIE
     (Cal. Bar. No. 84934)
3  JOSEPH N. DEMKO
     (Cal. Bar. No. 113104)
4  Two Embarcadero Center, Fifth Floor
   San Francisco, California  94111-3824
5  Telephone:    (415) 398-8080
   Facsimile:    (415) 398-5584
6  e-mail:       ndelancie@jmbm.com
                 jdemko@jmbm.com
7
   Attorneys for Secured Creditor
8  JOREI ENTERPRISES, LLC

9

10              UNITED STATES BANKRUPTCY COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                 SAN FRANCISCO DIVISION

13

14  In re:                          )      Case No. 09-30038 DM
                                     )             Chapter 11
15  BRUGNARA PROPERTIES VI,          )
                                     )
16                  Debtor.          )
   ──────────────────────────────────)
17

18

19                   **STIPULATION FOR**
20        **LIQUIDATION OF CLAIM AND RELATED RELIEF**

21         This Stipulation for Liquidation of Claim and Related Relief dated as of April 14,

22  2009 (this **"Stipulation"**), is made by and between (i) BRUGNARA PROPERTIES VI, a

23  California corporation (the **"Debtor"**), the debtor and debtor-in-possession in the above-

24  captioned Chapter 11 bankruptcy case (the **"Case"**); and (ii) JOREI ENTERPRISES, LLC, a

25  California limited liability company (the **"Lender"**; and the Debtor and the Lender, together,

26  the **"Parties"**), with reference to and in consideration of the facts set forth in the paragraphs

27  lettered A through J below (collectively, the **"Recitals"**).

28  \ \ \ \

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels
      Butler & Marmaro LLP

A. <u>Commencement of Case</u>. On January 7, 2009 (the **"Petition Date"**), the Debtor filed its Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code[1] dated, filed in the Case, and entered on the docket thereof (the **"Docket"**) on such date [Docket No. 1] (the **"Voluntary Petition"**) , thereby commencing the Case.

B. <u>Jurisdiction and Venue</u>. The United States Bankruptcy Court for the Northern Distinct of California (the **"Court"**) has jurisdiction over the Case and proceedings with respect to this Stipulation (such proceedings, including approval and implementation hereof, the **"Stipulation Proceedings"**) pursuant to Judicial Code Section 1334[2]. The Stipulation Proceedings constitute a "core proceeding" within the meaning of Judicial Code Section 157(b). Venue of the Case in the Court is proper under Judicial Code Section 1408(1), and venue of the Stipulation Proceedings in the Court is proper under Judicial Code Section 1409(a).

C. <u>Related Cases</u>.

    1. <u>Brugnara Properties I</u>. Brugnara Properties I, L.P., a California limited partnership (**"BPI"**), an affiliate of the Debtor, is the debtor and debtor in possession in that certain case under Chapter 11 of the Bankruptcy Code now pending in the Court bearing Case No. 08-32073, styled *In re Brugnara Properties I, L.P.* (the **"BPI Case"**). The BPI Case was commenced on October 31, 2008.

    2. <u>Brugnara Corporation</u>. Brugnara Corporation, a California corporation (**"BPVI"**), another affiliate of the Debtor, is the debtor and debtor in possession in that certain case under Chapter 11 of the Bankruptcy Code now pending in the Court bearing Case No. 09-

---

[1] All references herein to the Bankruptcy Code or sections thereof are to Title 11 of the United States Code and the sections thereof. All references herein to the Bankruptcy Rules or a rule thereof are to the Federal Rules of Bankruptcy Procedure and the rules thereof. All uncapitalized terms used herein that are defined or used in the Bankruptcy Code have the meanings such terms have in such code whether or not reference is made to a specific section thereof for such definition. The rules of construction set out in Bankruptcy Code Section 102 apply to this Stipulation. When used herein (i) "day" and "month", without qualification, mean calendar day and calendar month, respectively; and (ii) a "business day" means a day on which the Clerk of the Court is open for regular business.

[2] All references herein to the Judicial Code or sections thereof are to Title 28 of the United States Code and the sections thereof.

PRINTED ON
RECYCLED PAPER

30041, styled *In re Brugnara Corporation.* (the **"BC Case"**; and the BPI Case and the BC Case, together, the **"Related Cases"**). The BC Case was commenced on the Petition Date.

D. <u>Debtor in Possession</u>. No trustee or examiner has been appointed in the Case. The Debtor has remained in possession of its property and continues to operate its business as a debtor in possession pursuant to Bankruptcy Code Sections 1107 and 1108.

E. <u>Nature and Property of Debtor</u>. The estate (the **"Estate"**) of the Debtor created by the commencement of the Case pursuant to Bankruptcy Code Section 541(a) consists of certain real property, to wit: the residence located at and generally known as 224 Seacliff Avenue, San Francisco, California, the improvements thereon, the appurtenances thereto, and the various rights and personal property associated therewith (collectively, the **"Real Property"**).

F. <u>Value of Real Property</u>. The Debtor has not had the Real Property appraised during the Case. The Debtor believes that, as of the Petition Date, as set forth on Schedule A—Real Property of the Debtor's Schedules of Assets and Liabilities (the **"Schedules"**) filed together as part of the Voluntary Petition, the value of the Real Property was $17,800,000.

G. <u>Encumbrances and Secured Obligations</u>.

1. <u>Encumbrances</u>. The Real Property is subject to the following security interests:

a. <u>Senior Deed of Trust</u>. A deed of trust dated April 6, 2007 (the **"World Deed of Trust"**), made by the Debtor, as trustor, to Golden West Savings Association Service Co., as trustee, for the benefit of World Savings Bank, FSB (such bank, and any successor beneficiary of the World Deed of Trust, after such succession, **"World"**), securing, *inter alia*, the obligations of the Debtor to World under and in respect of a promissory note in the original principal amount of $6,000,000 (the **"World Note"**), made by the Debtor to the order of World, all as more particularly described and defined therein, which World Deed of Trust was recorded in the Office of the Recorder of San Francisco County, California (the **"Official Records"**) on April 12, 2007, as Instrument No. 2007-I-368040, and re-recorded on October 2, 2007, as Instrument No. 2007-I-468564; and

67572372v5 63018/0012

PRINTED ON RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Marmaro LLP

b. <u>Junior Deed of Trust</u>. That certain Deed of Trust, Assignment of Leases and Rents and Security Agreement (Including Fixture Filing) dated as of March 13, 2008 (the **"Junior Deed of Trust"**), made by the Debtor, as trustor, to Old Republic Title Company, as trustee, for the benefit of the Lender, securing, *inter alia*, the obligations of the Debtor to the Lender under and in respect of that certain Guaranty Agreement of even date therewith (the **"Guaranty"**), made by (i) the Debtor; (ii) BC; (iii) Brugnara Properties VII, a California corporation (**"BPVII"**); (i) Luke D. Brugnara (**"L. Brugnara"**); and (ii) Kay Brugnara (**"K. Brugnara"**; and the Debtor, BC, BPVII, L. Brugnara, and K. Brugnara, collectively, the **"Guarantors"**) to and in favor of the Lender, pursuant to which the Guarantors guaranteed payment and performance of the obligations of BPI under and with respect to (i) that certain Secured Promissory Note of even date therewith in the original principal amount of $11,350,000 (the **"BPI Note"**) made by BPI to the order of the Lender; and (ii) the Loan Agreement and the other Loan Documents, all as more particularly described and defined in the BPI Note (the BPI Note and such Loan Agreement and other Loan Documents, collectively, the **"BPI Loan Documents"**), which Junior Deed of Trust was recorded in the Official Records on March 14, 2008, as Instrument No. 2008-I-551542.

2. <u>Secured Obligations</u>.

a. <u>Secured Property Taxes</u>. The Debtor has estimated that, as of the Petition Date, as set forth on Schedule D—Creditors Holding Secured Claims of the Schedules (**"Schedule D"**), the Debtor was indebted to the City and Country of San Francisco for unpaid real property taxes on the Real Property in the amount of $30,000.00 (the **"Property Tax Indebtedness"**).

b. <u>World Loan</u>. The Debtor has estimated that, as of the Petition Date, as set forth on Schedule D—Creditors Holding Secured Claims of the Schedules, the Debtor was indebted to Wachovia Mortgage, as successor to World, under the World Note, for outstanding principal and some, but not all, accrued but unpaid interest in the aggregate amount of $6,150,000.00 (the aggregate of the indebtedness of the Debtor under and in respect of the World Note, the **"World Indebtedness"**).

PRINTED ON
RECYCLED PAPER

JMBM Jeffer Mangels Butler & Marmaro LLP

c. <u>Guaranty</u>. As of the Petition Date, the Debtor was indebted to the Lender under the Guaranty in respect of the BPI Note and the other BPI Loan Documents in the principal amount of $11,350,000.00, together with (i) accrued but unpaid interest thereon, including interest at the Default Rate (as defined in the BPI Note), in the amount of $933,537.50; and (ii) legal fees and other expenses of the Lender, including interest thereon as provided in the BPI Loan Documents, in the amount of $88,350.45, for a total, as of such date, of $12,371,887.95 (the **"Pre-Petition BPI Junior Indebtedness"**).

H. <u>BPI Stipulation and Resulting Matters</u>.

1. <u>BPI Stipulation</u>. Reference is made to that certain Stipulation for Relief from Stay and Related Relief of even date herewith made by BPI and the Lender and filed in the BPI Case (the **"BPI Stipulation"**).

2. <u>Value of BPI Estate Property and Amount of Debt Secured Thereby</u>. As set forth in the BPI Stipulation, BPI has acknowledged and agreed that (i) the "as is" market value of the leased fee estate of the Real Property and the other Encumbered Estate Property (both as defined in the BPI Stipulation) (together, the **"BPI Estate Property"**) does not exceed $**[38,600,000.00]** (the **"BPI Estate Property Agreed Value"**); and (ii) the aggregate indebtedness of BPI to the Lender that is secured by the BPI Estate Property was, as of the commencement of the BPI Case, $46,523,465.69 (the **"Pre-Petition BPI Aggregate Indebtedness"**). The Debtor does not dispute the BPI Estate Property Agreed Value or the Pre-Petition BPI Aggregate Indebtedness as set out in the BPI Stipulation.

3. <u>Resulting Minimum Amount Secured by Junior Deed of Trust</u>. Accordingly, even if the Guaranty were only a guaranty of the deficiency in the value of the BPI Estate Property, less senior indebtedness, to the Pre-Petition BPI Junior Indebtedness (rather than, as it is, a guaranty of the entire Pre-Petition BPI Junior Indebtedness without any requirement that the Lender first liquidate the BPI Estate Property before collecting on the Guaranty), there was, as of the Petition Date, an indebtedness of the Debtor to the Lender of more than $8,000,000.00 due under the Guaranty and secured by the Junior Deed of Trust (such

\ \ \ \

JMBM | Jeffer Mangels Butler & Marmaro LLP

PRINTED ON
RECYCLED PAPER

Page 5
SF-369006 v5 63018-0012

Stipulation for Liquidation of Claim
and Related Relief

Case 09-30788 Doc# 15 Filed: 04/16/09 Entered: 04/16/09 18:19:12 Page 5 of 26

indebtedness, in the full amount of the Debtor's liability under the Guaranty, the **"Guaranty Claim"**).

    I. <u>Desire to Settle</u>. In light of the BPI Estate Property Agreed Value, the Pre-Petition BPI Aggregate Indebtedness, the inability of BPI to raise or its affiliates to contribute to BPI sufficient capital to make a reorganization of BPI in the BPI Case either feasible or acceptable to the Lender, the consequent highly-likely inability of BPI to be able to confirm a plan of reorganization in the BPI Case over the objection of the Lender, the value of the Real Property, the Pre-Petition BPI Junior Indebtedness, the inability of the Debtor to raise or its affiliates to contribute to the Debtor sufficient capital to make a reorganization of the Debtor in the Case either feasible or acceptable to the Lender, the consequent highly-likely inability of the Debtor to be able to confirm a plan of reorganization in the Case over the objection of the Lender, and for various other reasons, the Debtor, BPI, and BC, and various of their affiliates have decided to settle their various disputes with the Lender in (i) the Case; (ii) the Related Cases; and (iii) the State Court Action (as defined in the BPI Stipulation) and certain other actions now pending in the State Court (as defined in the BPI Stipulation) (such settlement, the **"Settlement"**).

    J. <u>Settlement Agreement</u>. In memorialization of the Settlement, the Lender, the Debtor, and certain affiliates of the Debtor have entered into that certain Settlement Agreement of even date herewith (the **"Settlement Agreement"**). It is a condition to the effectiveness of the Settlement Agreement that, *inter alia*, the Debtor enter into this Stipulation.

## **STIPULATION**

    Based on the Recitals, the Debtor and the Lender stipulate and agree as follows:

    1. <u>Truth of Recitals</u>. The Recitals are true and correct in all material respects.

\\\\

\\\\

\\\\

\\\\

JMBM | Jeffer Mangels Butler & Marmaro LLP

PRINTED ON
RECYCLED PAPER

2.      Liquidation and Treatment of Guaranty Claim. Upon entry in the Case of the Claim Liquidation Order (defined in Paragraph 6 (Claim Liquidation Order) below) (the date of such entry, the **"Agreed Treatment Effective Date"**)—

(a)      Liquidated Claim. The Guaranty Claim will—

(i)      Liquidation. Be liquidated in the amount of $5,000,000.00 (such claim, as so liquidated, the **"Liquidated Claim"**);

(ii)      Non-Contingent and Non-Disputed. Be non-contingent and non-disputed;

(iii)      Allowance. Be allowed in the full amount of the Liquidated Claim and disallowed to the extent of any excess of the amount of the Liquidated Claim over the amount of the Guaranty Claim;

(iv)      Fully-Secured. Continue to be secured, to the extent of the Liquidated Claim, by the Junior Deed of Trust, and be, to such extent, fully-secured thereby;

(v)      Payment. Be due and payable, unless sooner due and payable pursuant to the Junior Deed of Trust as a result of an Event of Default thereunder, on the day that is the fifth anniversary of the Agreed Treatment Effective Date;

(vi)      No Interest. Not accrue interest prior to the Liquidated Claim becoming due and payable; provided, however, that from and after the time the Liquidated Claim becomes due and payable, it shall accrue interest at the rate of 15.5% per annum; and

(vii)      Enforceable. Be valid and enforceable according to the terms of this Stipulation, the Junior Deed of Trust, the Junior Deed of Trust Modification (defined in Paragraph 4(a) (Deed of Trust Modification) below), and the Claim Liquidation Order;

(b)      Deemed Section 1111(b)(2) Election. The Lender will be deemed to have elected application to the Guaranty Claim of Bankruptcy Code Section 1111(b)(2); and

(c)      Automatic Effectiveness. The Liquidated Claim will be allowed, valid, enforceable, due and payable, secured, and perfected as set out herein, as of the Agreed Treatment Effective Date, without any further action by the Debtor or the Lender, or further order of the Court, and without necessity of the execution, filing, or recording of any financing

PRINTED ON
RECYCLED PAPER

JMBM Jeffer Mangels Butler & Marmaro LLP

statements, security agreements, deeds of trusts, modifications thereof, or other documents; provided, however, that the Debtor shall comply with Paragraph 4(a) (Deed of Trust Modification) below.

3.    <u>Plan Matters</u>.

(a)    <u>No Less Favorable Treatment under Plan</u>. If the Debtor or any other party in interest proposes a plan of reorganization or liquidation in the Case (any such plan, the **"Plan"**), the treatment of the Guaranty Claim provided by the Plan shall not, without the Lender's consent, in its sole discretion, be any less favorable to the Lender than the treatment thereof set out in Paragraph 2 (Liquidation and Treatment of Guaranty Claim) above (such treatment as so set out, the **"Agreed Treatment"**).

(b)    <u>Deemed Acceptance of Plan</u>. The Lender shall be deemed to have accepted, without the necessity of submitting a ballot thereon, the Plan if the Plan provides that the treatment of Guaranty Claim is not less favorable to the Lender than the Agreed Treatment.

4.    <u>Memorialization of Agreed Treatment</u>.

(a)    <u>Deed of Trust Modification</u>. In order to memorialize the Agreed Treatment beyond this Stipulation and the Claim Liquidation Order, the Debtor shall, contemporaneously with its execution of this Stipulation, execute, acknowledge, and deliver to the Lender, in trust, the Modification and Ratification of Deed of Trust and Guaranty Agreement in the form attached hereto as **Exhibit B** (the **"Junior Deed of Trust Modification"**).

(b)    <u>Holding Deed of Trust in Trust; Release Thereof</u>. The Lender shall hold the Junior Deed of Trust Modification in trust pending either (i) the denial by the Court of the Debtor's motion to approve this Stipulation, in which case the Lender shall, as soon as is practicable thereafter, return the Junior Deed of Trust Modification to the Debtor (such denial, the **"Stipulation Denial"**); or (ii) the entry in the Case of the Claim Liquidation Order, in which case the Deed of Trust Modification shall be deemed released from such trust to the Lender and the Lender shall as soon as practicable thereafter record the Deed of Trust Modification in the Official Records (such recordation, the **"Recordation"**; and after such

PRINTED ON RECYCLED PAPER

entry, whether or not the Recordation has occurred, all references herein to the Junior Deed of Trust with respect to a time after such entry mean to the Junior Deed of Trust as modified by the Junior Deed of Trust Modification).

     5.   <u>Future Bankruptcy Matters</u>. In consideration of (i) the opportunities the Debtor has had during the Case and the negotiation of the Settlement Agreement and this Stipulation, and will hereafter have as a result, if it is approved by the Court, of the approval of the Settlement Agreement and this Stipulation and the effectiveness of the Claim Liquidation Order to resolve its financial difficulties; and (ii) the Lender's reliance on the provisions of the Settlement Agreement, this Stipulation, and, if the same is entered, the Claim Liquidation Order, and the Lender's acceptance of the Agreed Treatment and the other provisions of this Stipulation, in order that Lender may receive the benefits for which it has negotiated, if—

     (a)   <u>World Relief from Stay</u>. World obtains relief from the automatic stay provided by Bankruptcy Code Section 362(a) (such stay, the **"Automatic Stay"**) in the Case with respect to the Real Property and the World Deed of Trust, the Automatic Stay shall, without further order of the Court, immediately and simultaneously therewith be terminated as to the Lender with respect to the Real Property to permit the Lender (i) to commence and complete a "unified" non-judicial foreclosure sale of the Real Property; and (ii) to seek and obtain the appointment of a receiver for the Real Property pending the completion of such foreclosure sale, both pursuant to the Junior Deed of Trust and applicable nonbankruptcy law, and such termination shall not be stayed pursuant to Bankruptcy Rule 4001(a)(3); and

     (b)   <u>Subsequent Case</u>. A subsequent case under the Bankruptcy Code is filed by or against the Debtor, the Debtor will not assert or request any other party to assert that the Automatic Stay shall operate or be interpreted to stay, modify, preempt, condition, reduce, or limit the ability of the Lender to enforce any rights it has pursuant to applicable law, the Settlement Agreement, this Stipulation, the Claim Liquidation Order, or the Junior Deed of Trust, or any other rights the Lender has, whether now or hereafter acquired, against the Debtor or the Real Property.

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Marmaro LLP

Case 09-36900 5 Doc#015 Filed: 04/16/09 Entered: 04/16/09 18:19:12 Page 9 of 26

Without limiting the generality of the foregoing, if World obtains such relief or a subsequent case is so filed, the Debtor agrees that sufficient cause will exist by virtue thereof for the Court or the bankruptcy court having jurisdiction over such other case immediately to terminate the Automatic Stay as to the Lender so as to permit the Lender to exercise all of its rights and remedies under the Junior Deed of Trust and applicable nonbankruptcy law. The Debtor irrevocably consents and waives any right to object, and the Lender shall be entitled to an order granting relief from any and all stays, including the Automatic Stay, or equitable relief under Bankruptcy Code Section 105 or other applicable law, so as to permit the Lender to foreclose upon the Real Property and to exercise any and all other rights and remedies of Lender under applicable nonbankruptcy law, the Settlement Agreement, this Stipulation, the Claim Liquidation Order, or the Junior Deed of Trust. The Debtor further acknowledges and agrees that any such subsequent case shall be deemed to be, and any plan of reorganization that may be filed therein by or on behalf of the Debtor shall be deemed to be proposed or supported, in bad faith.

6.      Claim Liquidation Order. Subject to the approval of the Court, as soon as is practicable hereafter, an order (i) liquidating, allowing, otherwise providing of the treatment of the Guaranty Claim; and (ii) providing related relief, all as set forth herein, with respect to the Guaranty Claim, in the form attached hereto as **Exhibit A**, shall be entered in the Case (such order, the **"Claim Liquidation Order"**).

7.      Non-Dismissal of Case. The Debtor shall not seek entry of an order dismissing the Case sooner than either the Stipulation Denial or the Recordation; provided, however, that the Debtor may make a motion for such an order prior to such time so long as the hearing on such motion is not held and no order dismissing the Case is entered before such time. The Lender shall not oppose such motion so long as it does not conflict with the timing provisions of this Paragraph 7 (Non-Dismissal of Case). Upon the Recordation, if at all, the Lender shall file in the Case and serve on the Debtor, the Debtor's counsel in the Case, and the United States Trustee a notice of the same.

\\\\

Stipulation for Liquidation of Claim and Related Relief

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Marmaro LLP

8. Motion to Approve; Cooperation. The Debtor shall, within seven days of its execution of this Stipulation, file a motion in the Case seeking approval hereof in accordance with the Settlement Agreement. The Debtor shall cooperate in all respects in the effectuation of this Stipulation and the Claim Liquidation Order.

9. Binding Effect. The Claim Liquidation Order shall be binding in all respects upon the Debtor and the Lender.

10. Retention of Jurisdiction. The Court shall retain jurisdiction to enforce and resolve any disputes with respect to this Stipulation and the Claim Liquidation Order, which order shall so provide.

[Signatures on Following Page]

PRINTED ON RECYCLED PAPER

Jeffer Mangels Butler & Marmaro LLP

JMBM

WHEREFORE, the Parties have made this Stipulation as of the date first written above.

THE DEBTOR:

BRUGNARA PROPERTIES VI,
a California corporation

By: Law Offices of Stephen D. Finestone

By:  _/s/ Stephen D. Finestone_
Stephen D. Finestone
(Cal. Bar. No. 125675)

Attorneys for Debtor
BRUGNARA PROPERTIES VI

THE LENDER:

JOREI ENTERPRISES, LLC,
a California limited liability company

By: Jeffer, Mangels, Butler & Marmaro LLP

By:  _/s/ Nicolas De Lancie_
Nicolas De Lancie
(Cal. Bar. No. 84934)

Attorneys for Lender
JOREI ENTERPRISES, LLC

[Exhibits A and B Follow]

PRINTED ON
RECYCLED PAPER

JMBM Jeffer Mangels Butler & Marmaro LLP

JEFFER, MANGELS, BUTLER &
 MARMARO LLP
NICOLAS De LANCIE
 (Cal. Bar. No. 84934)
JOSEPH N. DEMKO
 (Cal. Bar. No. 113104)
Two Embarcadero Center, Fifth Floor
San Francisco, California 94111-3824
Telephone:     (415) 398-8080
Facsimile:     (415) 398-5584
e-mail:        ndelancie@jmbm.com
               jdemko@jmbm.com

Attorneys for Secured Creditor
JOREI ENTERPRISES, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 09-30038 DM |
| | ) | Chapter 11 |
| BRUGNARA PROPERTIES VI, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

**[FORM OF]**
**ORDER ON STIPULATION FOR**
**LIQUIDATION OF CLAIM AND RELATED RELIEF**

Having considered (i) the Stipulation for Liquidation of Claim and Related Relief

dated as of April 14, 2009, by and between (A) Brugnara Properties VI, a California

corporation, the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy

case; and (B) Jorei Enterprises, LLC, a California limited liability company (the

**"Stipulation"**)[*], filed in the Case on [date], 2009 [Docket No. [___]]; and (ii) the Debtor's

\ \ \ \

---

[*]  All capitalized terms used but not defined in this Order have the meanings ascribed to such terms in the Stipulation.

PRINTED ON
RECYCLED PAPER

Exhibit A—Page 1

SF 3906685 683-00415

[Form of] Order on Stipulation for
Liquidation of Claim and Related Relief

Case: 09-30038   Doc# 15   Filed: 04/16/09   Entered: 04/16/09 18:19:12   Page 13 of
26

[Motion to Approve Stipulation for Liquidation of Claim and Related Relief] dated and filed in the Case on [date], 2009 [Docket No. [___]] (the **"Motion"**) , and good cause appearing,

IT IS HEREBY ORDERED that—

1. <u>Motion Granted</u>. The Motion is hereby GRANTED and any objections to the Motion are hereby OVERRULED. Accordingly the Stipulation is hereby approved.

2. <u>Liquidated Claim</u>. The Guaranty Claim—

(a) <u>Liquidation</u>. Is liquidated in the amount of $5,000,000.00 (such claim, as so liquidated, the **"Liquidated Claim"**);

(b) <u>Non-Contingent and Non-Disputed</u>. Is non-contingent and non-disputed;

(c) <u>Allowance</u>. Is allowed in the full amount of the Liquidated Claim and disallowed to the extent of any excess of the amount of the Liquidated Claim over the amount of the Guaranty Claim;

(d) <u>Fully-Secured</u>. Continues to be secured, to the extent of the Liquidated Claim, by the Junior Deed of Trust, and is, to such extent, fully-secured thereby;

(e) <u>Payment</u>. Shall be due and payable, unless sooner due and payable pursuant to the Junior Deed of Trust as a result of an Event of Default thereunder, on the day that is the fifth anniversary of the date of the entry of this Order in the Case (such date, the **"Agreed Treatment Effective Date"**);

(f) <u>No Interest</u>. Shall not accrue interest prior to the Liquidated Claim becoming due and payable; provided, however, that from and after the time the Liquidated Claim becomes due and payable, it shall accrue interest at the rate of 15.5% per annum; and

(g) <u>Enforceable</u>. Is valid and enforceable according to the terms of the Stipulation, the Junior Deed of Trust, the Junior Deed of Trust Modification (defined in Paragraph 6(a) (Deed of Trust Modification) below), and this Order.

3. <u>Deemed Section 1111(b)(2) Election</u>. The Lender is hereby deemed to have elected application to the Guaranty Claim of Bankruptcy Code Section 1111(b)(2); and

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels
Butler & Marmaro LLP

4.    <u>Automatic Effectiveness</u>. The Liquidated Claim is allowed, valid, enforceable, due and payable, secured, and perfected as set out in Paragraph 2 (Liquidated Claim) above, as of the date of the Agreed Treatment Effective Date, without any further action by the Debtor or the Lender, or further order of this Court, and without necessity of the execution, filing, or recording of any financing statements, security agreements, deeds of trusts, modifications thereof, or other documents; provided, however, that the Debtor shall comply with Paragraph 6(a) (Deed of Trust Modification) below.

5.    <u>Plan Matters</u>.

(a)    <u>No Less Favorable Treatment under Plan</u>. If the Debtor or any other party in interest proposes a plan of reorganization or liquidation in the Case (any such plan, the **"Plan"**), the treatment of the Guaranty Claim provided by the Plan shall not, without the Lender's consent, in its sole discretion, be any less favorable to the Lender than the treatment thereof set out in Paragraph 2 (Liquidated Claim) above (such treatment as so set out, the **"Agreed Treatment"**).

(b)    <u>Deemed Acceptance of Plan</u>. The Lender shall be deemed to have accepted, without the necessity of submitting a ballot thereon, the Plan if the Plan provides that the treatment of Guaranty Claim is not less favorable to the Lender than the Agreed Treatment.

6.    <u>Memorialization of Agreed Treatment</u>.

(a)    <u>Deed of Trust Modification</u>. The execution, acknowledgement, and delivery to the Lender of the Junior Deed of Trust Modification by the Debtor is hereby approved.

(b)    <u>Recordation</u>. As soon as practicable after the Agreed Treatment Effective Date, the Lender shall record the Junior Deed of Trust Modification in the Official Records (such recordation, the **"Recordation"**; and after the entry of this Order in the Case, whether or not the Recordation has occurred, all references herein to the Junior Deed of Trust with respect to a time after such entry mean to the Junior Deed of Trust as modified by the Junior Deed of Trust Modification).

\\\\

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Marmaro LLP

7.     Relief from Stay. If World obtains relief from the Automatic Stay in the Case with respect to the Real Property and the World Deed of Trust, the Automatic Stay shall, without further order of this Court, immediately and simultaneously therewith be terminated as to the Lender with respect to the Real Property to permit the Lender (i) to commence and complete a "unified" non-judicial foreclosure sale of the Real Property; and (ii) to seek and obtain the appointment of a receiver for the Real Property pending the completion of such foreclosure sale, both pursuant to the Junior Deed of Trust and applicable nonbankruptcy law, and such termination shall not be stayed pursuant to Bankruptcy Rule 4001(a)(3).

8.     Non-Dismissal of Case. The Debtor shall not seek entry of an order dismissing the Case sooner than the Recordation; provided, however, that the Debtor may make a motion for such an order prior to such time so long as the hearing on such motion is not held and no order dismissing the Case is entered before such time. The Lender shall not oppose such motion so long as it does not conflict with the timing provisions of this Paragraph 8 (Non-Dismissal of Case). Upon the Recordation, the Lender shall file in the Case and serve on the Debtor, the Debtor's counsel in the Case, and the United States Trustee a notice of the same.

9.     Binding Effect and Cooperation. This Order shall be binding in all respects on the Debtor and the Lender. The Debtor shall cooperate in all respects in the effectuation of the Stipulation and this Order.

10.     Retention of Jurisdiction. The Court retains jurisdiction to enforce and resolve any disputes with respect to the Stipulation and this Order.


** END OF ORDER **

PRINTED ON
RECYCLED PAPER

PRINTED ON
RECYCLED PAPER

1

2 **<u>COURT SERVICE LIST</u>**

3

4 [Debtor]
Brugnara Properties VI
5 Attention:  Luke Brugnara
351 California Street, 16th Floor
6 San Francisco, California 94104

7 [Counsel for Debtor]
Stephen D. Finestone, Esq.
8 Law Offices of Stephen D. Finestone
456 Montgomery Street, 20th Floor
9 San Francisco, California 94104

10 [United States Trustee]
Office of the U.S. Trustee
11 San Francisco Divisional Office
Attention:  Julie M. Glosson, Esq.
12 235 Pine Street, Suite 700
San Francisco, California 94104-3401

13

14 [Counsel for Lender]
Jeffer, Mangels, Butler & Marmaro LLP
Attention:  Nicolas De Lancie, Esq.
15 Two Embarcadero Center, Fifth Floor
San Francisco, California 94111-3824

16

17

18

19

20

21

22

23

24

25

26

27

28

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Joel J. Berman, Esq.
Jeffer, Mangels, Butler & Marmaro LLP
1900 Avenue of the Stars
7th Floor
Los Angeles, California 90067

## MODIFICATION AND RATIFICATION OF DEED OF TRUST AND GUARANTY AGREEMENT

This MODIFICATION AND RATIFICATION OF DEED OF TRUST AND GUARANTY AGREEMENT (this "Modification") is made as of the 14th day of April, 2009, by and between JOREI ENTERPRISES, LLC ("Lender"), whose address is One Park Plaza, Suite 500, Irvine, California 92614, and BRUGNARA PROPERTIES VI, a California corporation, Debtor-in-Possession in the Brugnara VI - DIP Bankruptcy Proceeding defined below ("Grantor"), whose address is c/o Law Offices of Stephen D. Finestone, 456 Montgomery Street, 20th Floor, San Francisco, California 94104.

WHEREAS, Brugnara Properties I, L.P., a California limited partnership ("Borrower"), and Lender are parties to that certain Loan Agreement dated as of March 12, 2008 (the "Junior Loan Agreement"), providing for, among other things, a loan by Lender to Borrower in the original principal amount of $11,350,000 (the "Junior Loan"). Grantor, LUKE D. BRUGNARA, also known as Lucian D. Brugnara, an individual, KAY BRUGNARA, an individual, BRUGNARA PROPERTIES VII, a California corporation, and BRUGNARA CORPORATION, a California corporation (collectively, with Grantor, the "Junior Loan Guarantors") unconditionally and irrevocably guaranteed payment and performance of the Junior Loan pursuant to the Guaranty Agreement, dated as of March 13, 2008 (the "Junior Loan Guaranty"), in favor of Lender. Grantor's obligations under the Junior Loan Guaranty are secured by the Deed of Trust, Assignment of Leases and Rents and Security Agreement (including Fixture Filing), dated as of March 13, 2008 (the "Junior Deed of Trust"), made by Grantor in favor of Lender, recorded on March 14, 2008, as Series No. 08-I551542, in the Official Records of San Francisco County, California (the "Official SF Records") and encumbering the real property legally described on Exhibit A attached hereto (the "Real Property").

WHEREAS, the Junior Deed of Trust is junior in lien priority to that certain deed of trust, dated April 6, 2007 (the "Senior Deed of Trust"), made by Grantor in favor of World Savings Bank, FSB, recorded on April 12, 2007 in Reel J368 of the Official SF Records Image 0206 under Recorder's Serial Number 2007-I368040-00, and re-recorded October 2, 2007, as Instrument No. 2007-I468564-00 in Reel J488, Image 0172 of the Official SF Records.

WHEREAS, Borrower has failed to make the payments due on the obligations secured by the Senior Deed of Trust (the "Current Senior Defaults") and has also failed to pay real property taxes due with respect to the Real Property (the "Real Property Taxes").

Exhibit B

WHEREAS, the Junior Loan is presently in default as a consequence of, among other things, Borrower's failure to pay the full amount of the indebtedness owing by Borrower to Lender under the Junior Loan Agreement at maturity on September 10, 2008, and the Current Senior Defaults under the Senior Loan, and the obligations due Lender with respect to the Junior Loan are now due and payable to Lender.

WHEREAS, as a result of the foregoing defaults with respect to the Junior Loan, among other things Lender commenced a nonjudicial foreclosure of the Junior Deed of Trust by recording a Notice of Default and Election to Sell (the "Junior Loan Notice of Default" in the Official SF Records on September 3, 2008 and thereafter publishing a Notice of Trustee's Sale with respect to the Real Property.

WHEREAS, on January 7, 2009, Grantor filed a petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "Bankruptcy Court"), Case No. 09-30038 (the "Brugnara VI - DIP Bankruptcy Proceeding").

WHEREAS, Grantor, Lender and others have reached settlement regarding Grantor's liability with respect to the Junior Loan, among other things, pursuant to the terms and conditions of that certain Settlement Agreement, dated as of April 14, 2009 (the "Settlement Agreement").  Capitalized terms, which are used herein but not defined herein, shall have the meanings ascribed to them in the Settlement Agreement.

WHEREAS, Section 2.1.2 of the Settlement Agreement provides:

"Brugnara VI - DIP and Lender shall execute and deliver to Lender a Stipulation for Modification of Obligations and Deed of Trust (the 'Brugnara VI - DIP Stipulation'…), permitting a modification of the Junior Loan Guaranty as to Brugnara VI - DIP to liquidate the amount of Brugnara VI - DIP's liability thereunder at $5,000,000 and to provide for payment, without interest, of such amount in five years from the Closing Date."

WHEREAS, concurrently with the execution and delivery of the Brugnara VI - DIP Stipulation, Brugnara VI - DIP and Lender executed the original of this Modification, the form of which is attached as Exhibit B to the Brugnara VI - DIP Stipulation. "

NOW THEREFORE, the parties agree as follows:

1.    All of the recitals set forth above are incorporated by reference herein.

2.    This Modification is effective upon the later to occur in the Bankruptcy Court in the Brugnara VI - DIP Proceeding of the following (the "Modification Effective Date"): (a) the entry of an order approving the Settlement Agreement and (b) the entry of the order, the form of which is attached as Exhibit A to the Brugnara VI - DIP Stipulation, pursuant to which the Bankruptcy Court will have approved the Brugnara VI - DIP Stipulation, including this Modification.

3.    The Junior Loan Guaranty is hereby modified as follows:

2

3.1    The following are added to the definitions in <u>Section 1.1</u> thereof:

"**Bankruptcy Court**" shall have the meaning ascribed to it in the Settlement Agreement.

"**Brugnara VI - DIP Proceeding**" shall have the meaning ascribed to it in the Settlement Agreement.

"**Brugnara VI - DIP Stipulation**" shall have the meaning ascribed to it in the Settlement Agreement.

"**Closing Date**" shall have the meaning ascribed to it in the Settlement Agreement.

"**Cure**" shall mean payment of all past due obligations or a modification of payment obligations on terms accepted by the obligor and obligee, in each case resulting in the obligations no longer being in default.

"**Cure Period**" shall mean the period of on hundred twenty (120) days following the later to occur in the Bankruptcy Court in the Brugnara VI - DIP Proceeding of the following:  (i) the entry of an order approving the Settlement Agreement and (ii) the entry of the order, the form of which is attached as <u>Exhibit A</u> to the Brugnara VI - DIP Stipulation, pursuant to which the Bankruptcy Court will have approved the Brugnara VI - DIP Stipulation.

"**Current Senior Defaults**" shall mean failure to make the monthly payments due in the obligations secured by the Senior Seacliff Deed of Trust.

"**Event of Default**" shall mean any of the following:

(a)    recording of a notice of default with respect to the Senior Seacliff Deed of Trust;

(b)    the beneficiary of the Senior Seacliff Deed of Trust obtains relief from the automatic stay in the Brugnara VI - DIP Proceeding;

(c)    except with respect to the Current Senior Defaults, the occurrence of: (i) any default of any payment obligation (including, without limitation, payment of principal, interest or insurance premiums but excluding real property taxes) under or secured by the Junior Deed of Trust encumbering the Seacliff Property remains uncured, following ten (10) days' notice to Guarantor at Guarantor's Address, beyond any applicable cure period; or (ii) any default of any performance (as opposed to payment) obligation under or secured by the Junior Deed of Trust encumbering the Seacliff Property remains uncured, following one hundred twenty (120) days' notice to Guarantor at Guarantor's Address, beyond any applicable cure period; or (iii) any failure to bring current the real property taxes due with respect to the Seacliff Property by April 30, 2010.

3

(d)     failure to Cure the Current Senior Defaults within the Cure Period.

"**Guarantor's Address**" shall mean: c/o Law Offices of Stephen D. Finestone, 456 Montgomery Street, 20th Floor, San Francisco, CA 94104

"**Junior Deed of Trust**" shall have the meaning ascribed to it in the Settlement Agreement.

"**Seacliff Property**" shall have the meaning ascribed to it in the Settlement Agreement.

"**Senior Seacliff Deed of Trust**" shall mean that deed of trust encumbering the Seacliff Property which is senior in lien priority to the Junior Deed of Trust encumbering the Seacliff Property.

"**Settlement Agreement**" shall mean that certain Settlement Agreement, dated as of April 14, 2009, by and among the Lender, Borrower (acting as debtor-in-possession) and all of the persons and entities comprising the Guarantor (some of whom are acting as debtors-in possession).

3.2     The following is added at the end of the definition of "Liabilities" in Section 1.1:

"Notwithstanding anything to the contrary set forth in this Guaranty Agreement, the principal amount of 'Liabilities' of Brugnara Properties VI, a California corporation, as one of the parties constituting the Guarantor under this Guaranty Agreement, shall be liquidated in the amount of $5,000,000, which shall be due and payable without interest on or before the fifth anniversary of the Closing Date; provided, however, that (x) upon the occurrence of any Event of Default, all Liabilities shall be immediately due and payable; and (y) upon the occurrence of an Event of Default which remains uncured beyond any applicable cure period, said principal amount shall, from the date due, bear interest at the date of 15.5% per annum.

3.3     The following is added at the end of the first sentence of Section 2.1:

", subject to the limitation of Liabilities set forth in the last sentence of the definition thereof in Section 1.1 hereof."

3.4     The address for all Guarantors on page 20 is deleted and replaced by Guarantor's Address.

4.     Section 1.3.1 of the Deed of Trust is amended and restated as follows:

"**Guaranty Agreement**. Payment of all indebtedness and other obligations under the Guaranty Agreement, including all extensions, renewals and modifications of the Guaranty Agreement, including without limitation that certain Modification and Ratification of Deed of Trust and Guaranty Agreement, dated as of April 14, 2009, by and between Beneficiary and Trustor, as debtor-in-possession in the Bankruptcy Court, Case No. 09-30038."

4

5.     Section 1.3.4 of the Deed of Trust is amended by the addition of the following at the end thereof:

> "Any payments made by Beneficiary as described in this Section 1.3.4, including any sums advanced by Beneficiary to pay any obligation due the beneficiary of any deed of trust senior to this Deed of Trust, shall constitute a 'Future Advance.'"

6.     Lender agrees to forbear, for a period of one hundred twenty (120) days following the Modification Effective Date (the "Forbearance Period"), from exercising its rights and remedies arising from the occurrence of the Current Senior Defaults, so long as: (a) all of the Current Senior Defaults have been Cured prior to the end of the Forbearance Period and (b) no other Event of Default (as defined in the Junior Deed of Trust), other than the payment of real property taxes with respect to the Seacliff Property, shall have occurred and be continuing beyond any applicable cure period.  As used herein, "Cured" shall have the correlative meaning set forth in Section 3 of this Modification.

7.     At such time that no Event of Default (including without limitation any Current Senior Default and any failure to bring the Real Property Taxes current) remains outstanding, Lender shall, at Grantor's request and expense, cause the obligation secured by the Junior Deed of Trust to be reinstated.  Notwithstanding anything to the contrary contained in this Modification: (x) Lender shall not be obligated to cancel the Junior Loan Notice of Default until such time as the Current Senior Defaults are Cured and no other Event of Default (as defined in Section 3 of this Modification, including without limitation failing to bring the Real Property Taxes current) remains outstanding and (y) Lender may not proceed to publish a notice of sale with respect to the Real Property unless an Event of Default (as defined in Section 3 of this Modification) has occurred and is continuing; and (z) for purposes of this Modification, if Lender is entitled to proceed with publication of a notice of sale with respect to the Real Property pursuant to clause (y) above, the obligations secured by the Junior Deed of Trust will be deemed to be accelerated.

8.     Grantor hereby represents, warrants and covenants to Lender that all rights or interests of any and all persons who now, or on the date this Modification is recorded, occupy or may otherwise be in possession of all or any portion of the Real Property are subject to and subordinate to the lien, security interest, and charge upon the Real Property of the Junior Deed of Trust and all rights and interests of Lender thereunder.

9.     For this Modification to be effective, the entities and individuals whose names appear below the signatures of Grantor and Lender hereon, following words "CONSENTED AND AGREED TO", must execute this Modification in the spaces indicated and in recordable form.  By signing this Modification as indicated, each such entity or individual (in his or her individual or representative capacities, as applicable) hereby consents to and agrees to be bound by the provisions of this Modification.

10.     Except as specifically supplemented and amended herein or in the Settlement Agreement, each of the Junior Deed of Trust and the Junior Loan Guaranty, each of which is incorporated by reference herein, is hereby ratified and confirmed, and the same shall continue in full force and effect; provided, however, that nothing in this Modification shall affect the release

5

from liability of Borrower and Senior Loan Guarantors under the Loan Documents on the terms and conditions set forth in the Settlement Agreement.

11. This Modification may be executed in counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same instrument.

**GRANTOR:**

BRUGNARA PROPERTIES VI, a California
corporation, Debtor-in-Possession

By:_____
    Luke D. Brugnara, also known as Lucian D.
Brugnara, President and Secretary

**LENDER:**

JOREI ENTERPRISES, LLC, a California limited
liability company

By:_____
    Name:_____
    Title:_____

By:_____
    Name:_____
    Title:_____

CONSENTED AND AGREED TO:

_____
Luke D. Brugnara, also known as Lucian D. Brugnara, an individual


_____
Kay Brugnara, an individual

Brugnara Properties VII, a California corporation


By: _____
    Luke D. Brugnara, aka Lucian D. Brugnara, President


Brugnara Corporation, a California corporation,
Debtor-in-Possession


By: _____
    Luke D. Brugnara, aka Lucian D. Brugnara, President

7

EXHIBIT A

The land referred to is situated in the County of San Francisco, City of San Francisco, State of California, and is described as follows:

Beginning at a point on the Northerly line of Seacliff Avenue, distant thereon 74.302 feet Westerly from the Southwesterly corner of Lot No. 76 of Subdivision No. 1 of Sea Cliff in the City and County of San Francisco, State of California, according to Map thereof recorded April 1, 1913, in Book "G" of Maps, Page 98 and 99, in the Office of the Recorder of the City and County of San Francisco, State of California; running thence Westerly along the said line of Seacliff Avenue 54.493 feet; thence North 3° 23' West 132.071 feet; thence North 88° East 29.011 feet; thence North 4° 30' 29" East 42.240 feet to a line of ordinary high tide of the waters of the Pacific Ocean; thence North 64° 48' 40" East along said line of ordinary high tide 21.122 feet; thence South 3° 23' East 178.127 feet to the point of beginning.

COUNTY OF _____           )
                                        ) ss.
STATE OF CALIFORNIA                      )


On _____ before me, _____ (here insert name and title of the officer), personally appeared_____
_____ ,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


Signature _____ (Seal)




COUNTY OF _____           )
                                        ) ss.
STATE OF CALIFORNIA                      )


On _____ before me, _____ (here insert name and title of the officer), personally appeared_____
_____ ,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


Signature _____ (Seal)